UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Mark L Pereguoy                              *

    Plaintiff.                               *

v.                                            *

State of Maryland, Carroll County,            *   CIVIL ACTION NO.:
Maryland and Kenneth L.                           MJG02CV4165
Tregoning, Carroll County Sheriff             *

    Defendants.                           *

### AFFIDAVIT OF SHERIFF KENNETH TREGONING

1.   I am over the age of 18 years.

2.   I am competent to testify; I am the Sheriff of Carroll County, Maryland. I was elected in 1998, began serving my term in December of 1998, and was reelected in 2002.

3.   At the time of his sudden resignation, Captain Peregoy was a valued and trusted member of the Sheriff's Department. He was third in command of the Detention Center, reporting only to the Warden and to me. His expansive duties encompassed training, internal investigations, and other special assignments relating to sensitive and confidential information.

4.   Captain Peregoy voluntarily resigned after being assigned as a Shift Commander by Warden George Hardinger ("Warden Hardinger"). Although it was not, Captain Peregoy perceived the temporary transfer as a demotion, which conflicted with the hours of evening courses he and his wife wished to take. At no time prior to his resignation did Captain Peregoy ask to speak with either Warden Hardinger or with me concerning his continued employment. He simply indicated to Warden Hardinger that the reassignment conflicted

EXHIBIT 5

with personal plans. Further, Captain Peregoy failed to file or pursue any grievance prior to his resignation.

5. Captain Peregoy was first employed by the Sheriff's Department as a Correctional Officer in July 1981. Upon completion of his probation, he became a Correctional Officer I. He was promoted from Correctional Officer I to the rank of Corporal effective June 30, 1983; from the rank of Corporal to Sergeant effective July 12, 1984; from the rank of Sergeant to Second Lieutenant effective February 8, 1996; from the rank of Second Lieutenant to First Lieutenant effective April 1, 1999; from First Lieutenant to Correction Officer VII effective July 1, 1999; from Correction Officer VII to Correction Officer VIII effective April 27, 2000; and re-classified to the rank of Captain effective April 27, 2000. Effective February 1, 2002, he was temporarily transferred from Special Operations to Security Commander, Shift 2. On February 7, 2002, Captain Peregoy submitted his written letter of resignation.

6. Captain Peregoy's promotional record belies any claim of retaliation. For example, the record establishes that Captain Peregoy's promotions from the rank of Second Lieutenant to First Lieutenant, and from the rank of First Lieutenant to Captain, were achieved with only the minimum time required being spent in each grade. Captain Peregoy's employment record further establishes that his duties and responsibilities were changed and adapted to best meet the operational needs of the Sheriff's Department.

7. The relocation of Captain Peregoy's office was only one in a series of moves made to provide adequate office space for all of the Department's employees. Other changes implemented at or about the same time resulted in Major Earl Stephen Turvin, the Assistant Warden, sharing an office with the shift supervisors; the Detention Center's three Classification Officers giving up their private offices to share one office; the conversion of

two offices near the visiting area to temporary housing for female inmates; the conversion of the Warden's Conference Room to open work areas for two supervisors, presently Captain Reynolds and Lieutenant Miller; the Supervisor and Transportation Unit Officers to share space in the Police Officers' Report Room adjacent to the Central Booking Unit; and the Substance Abuse Counselors giving up their private offices to accommodate two counselors per office, including the supervisor.

8.  Prior to the relocation of his office in October 2000, Captain Peregoy was fully aware of the plans to expand the Detention Center's Records Unit, and he knew that the Unit would be relocated near the Main Control Center. At no time was Captain Peregoy, then the Commander of Special Operations, told by Warden Hardinger "to go find a place." To the contrary, Warden Hardinger allowed Captain Peregoy to determine which offices he and his subordinates would occupy in the Special Operation Area.

9.  At the time of the relocation, Captain Peregoy was utilizing Family Medical Leave. On October 9, 2001, Warden Hardinger called Captain Peregoy to inform him that the relocation of his office and staff was imminent due to the expansion of the Records Unit. In response, Captain Peregoy offered to stop by to discuss his options after a visit to his doctor's office. After meeting with Warden Hardinger and his own subordinates, Captain Peregoy determined that the most suitable arrangement called for him to share an office with Lieutenant Salvertore Brown. Even then, Warden Hardinger further discussed the arrangement with Captain Peregoy, Lieutenant Brown, and Sergeant Royster before it was implemented.

10.  In short, Captain Peregoy relocated to the Special Operations Area so that he could better supervise his assigned units. He chose this area because it allowed him to be closer to the employees he supervised, as the Central Booking, Pre-Trial Services, Work Release,

and Transportation Units were all located in, or were located adjacent to, the Special Operations Administrative Area.

11.   Captain Peregoy was provided with the details of his reassignment during a meeting on January 15, 2002. The duties and responsibilities of the Shift Commanders were discussed with Major Turvin and Captain Peregoy. Both were given a detailed description of their duties and responsibilities at the beginning of the meeting. Copies of the respective job descriptions given to both are included as Exhibits.

12.   The primary purpose of this meeting was to discuss Major Turvin's and Captain Peregoy's shared duties and responsibilities. This was most effectively done through review of the job descriptions. Prior to leaving the meeting, Captain Peregoy asked Colonel Keefer if he were going to be compensated for doing the same work as Major Turvin. Captain Peregoy was told that, while their duties were similar, he was not being asked to perform the additional duties required of the Assistant Warden.

13.   Captain Peregoy's assignment actually expanded his scope of supervision. As a Shift Commander, still bearing the rank of Captain, the number of employees supervised by Captain Peregoy would actually have increased. This is because the planned reorganization placed Captain Peregoy in charge of *all* employees working at the Detention Center during the evening shift, and not just the employees assigned to the Special Operation Units. And, due to the absence of the Warden and Assistant Warden, Captain Peregoy, in effect, would have been in command of the Detention Center for this period.

14.   Even the potential conflict caused by the hours was addressed. At the meeting on January 15, 2002, the Warden, who was aware of the problem, asked Captain Peregoy to submit a schedule for consideration. Instead, Captain Peregoy contacted the Warden on two occasions, asking that the transfer be rescinded or deferred until the end of June 2002. Due

to the Detention Center's operational needs, both requests were denied. A subsequent proposal to work a ten-hour shift, four days a week, was turned down because it would have created an overlap in supervision.

15. Because the reassignment of Major Turvin from Assistant Warden to Shift Commander had proven highly successful, both Warden Hardinger and I were confident that the transfer of Captain Peregoy would prove equally successful. However, both I and the Warden also felt Captain Peregoy would do a better job as Shift Commander than as Commander of Special Operations. First, I approved Captain Peregoy's transfer because the move best utilized Peregoy's twenty years of correctional experience in the training of newly promoted supervisors and junior staff. Prior to the transfer, the Warden and I both had legitimate concerns about Captain Peregoy's attitude and competence during his tenure as Commander of Special Operations. For instance, the Warden received two reports regarding Captain Peregoy's apparent lack of diligence in supervising the collection and deposit of various inmate fees. Colonel Robert Keefer, the Sheriff's Chief deputy, was also concerned about Captain Peregoy's competence and attitude. For instance, on May 9, 2001 and May 11, 2001, Colonel Keefer had to give Captain Peregoy two separate orders after noticing that Peregoy had (1) failed to timely complete a written directive and (3) was not wearing a pager while on duty. During both of these incidents, Captain Peregoy was argumentative with a superior officer.

16. Regarding the investigation into the race discrimination complaint filed by Lt. Salvertore Brown, I requested that the County Attorney, Kim Millender, conduct an investigation into Lt. Brown's complaint. When the investigation was concluded in November of 2000, I received a response from Ms. Millender, dated November 28, 2000, indicating that the investigation had concluded, that all the individuals with pertinent

information had been interviewed, and that there was no evidence of race discrimination. At the time of the investigation, Captain Peregoy was Lt. Brown's supervisor. Though I had reason to believe Captain Peregoy was among those interviewed by Ms. Millender, I had no knowledge of what was discussed during the interview or what Captain Peregoy might have told Ms. Millender.

17. I was aware of Lt. Brown's complaint because he reported to me in October of 1999 that the Warden had used a racist term during a private conversation with him the previous month. The Warden assured me and Lt. Brown that he did not intend for the term to be construed as a racial slur but nonetheless apologized to Lt. Brown. Since this occurred, there there have been no similar incidents involving the Warden.

18. Nonetheless, Lt. Brown filed suit against the Warden and me. The suit against the Warden was dismissed. On January 16, 2003, summary judgment was entered in my favor by the Honorable Marvin J. Garbis.

19. The relocation of Captain Peregoy's office and his subsequent reassignment had absolutely nothing to do with Captain Peregoy's alleged participation in any race discrimination investigation, proceeding, or complaint. The sole reasons for Captain Peregoy's relocation and reassignment were based on the (1) operational needs of the Sheriff's Office and (2) the perceived benefits of moving Captain Peregoy to a position where he could be more effective. In no way were the actions taken with any retaliatory or discriminatory motive.

**I HEREBY DECLARE OR AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT BASED UPON MY PERSONAL KNOWLEDGE.**

KENNETH TREGONING
SHERIFF, CARROLL COUNTY