IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARK L. PEREGUOY | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.:MJG 02 CV 4165 |
| STATE OF MARYLAND, et al. | * | |
| Defendants | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
RESPONSE TO MOTION TO DISMISS COMPLAINT
<u>OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>**

Mark L. Pereguoy, Plaintiff, by his attorney, Ronald R. Hogg submit this Memorandum in support of his Response to Motion to Dismiss Complaint, or, Alternatively, For Summary Judgment.

I. Introduction

Plaintiff began working at the Carroll County Sheriff's Department in July, 1981, where he eventually attained the rank of Captain. He had various responsibilities during his over twenty years of service and at one time supervised twenty-five to thirty personnel. Plaintiff was generally an exemplary employee. A complaint was filed with United States Equal Employment Commission (EEOC) by an African American co-worker as a result of the use of racially offensive terms Defendant Hardinger. During the subsequent investigation Plaintiff confirmed with investigators the use of these racially offensive remarks by Defendant Hardinger. Defendant Hardinger, along with Defendant Tregoning, after learning of Plaintiff's cooperation with investigators retaliated against Plaintiff by taking away virtually all of Plaintiff's job responsibilities and duties. Eventually, Plaintiff felt compelled to resign from his

1

meaningless position thereby fulfilling Defendant Hardinger's and Defendant Tregoning's goal to be rid of Plaintiff. After his EEOC Complaint, Plaintiff filed suit with this Court. Plaintiff also incorporates by reference his attached Exhibit A as if fully set forth herein.

## II. Standard of Review

On review of dismissal of pleadings, the Court accepts well-pleaded allegations in the Complaint as true, and construes those allegations in a light most favorable to the Plaintiff. <u>Hishon</u> v. <u>King & Spalding</u> 476 U.S. 69 (1984) Summary judgment is pleaded in the alternative by Defendants with essentially the same standard of review existing for summary judgment. A Court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>Conley</u> v. <u>Gibson,</u> 355 U.S. 41 (1957) By any standard or review, Defendants are not entitled to their requested relief.

## III. Argument

In their memorandum filed in support of their Motion to Dismiss or, in the Alternative, for Summary Judgment, Defendants set forth in detail various factual allegations. These factual details deal with Plaintiff's employment history, interview with the county attorney, office relocation and Plaintiff's reassignment. Defendants' contend that such facts are undisputed. In fact, many of such facts, material and otherwise, are in dispute (Exhibit A) and as such preclude a finding for Defendants on their Motion.

### A. Interview with County Attorney Kimberly Millender

Defendants have accurately described the investigation carried out by the County Attorney, Kimberly Millender, ("Millender"), as an "in-house" investigation. Defendants note that Plaintiff was interviewed by the County Attorney on November 6, 2000 as part of that investigation. Plaintiff told Millender what he knew about the use of racial slurs by

2

Warden Hardinger ("Hardinger") in the presence of Lt. Brown. This incident was discussed by Hardinger with Plaintiff. Hardinger confirmed the use of the term with Plaintiff but said it was taken out of context. Millender asked Plaintiff what action he felt should be taken with regard to the incident. His response was that he believed Hardinger should be fired. He also told her that he did not have a good impression of Hardinger. In essence, he told Millender that the Carroll County Detention Center had a problem with racial sensitivity and that the problem would continue if Hardinger remained as Warden. (Exhibit A at p. 6) Ordinarily, "in-house" investigators are normally sensitive to subtle comments and statements made by those they interview much less, rather definitive statements like those made by Plaintiff. Plaintiff's statement was not reflected in any report by Millender but Plaintiff feels strongly that his statement was conveyed to Hardinger and Tregoning. Despite Plaintiff's forthright statements to Millender, racial incidents continued. These incidents were pointed out to Hardinger, Tregoning and Colonel Keefer. When asked by his superiors, Plaintiff would report the incidents and inform them that he felt the racial problems continued at the detention center. Tregoning's response was that Plaintiff had an attitude and competency problem. (Exhibit A at p. 4)

### B. Office Relocation

In April 2000, Plaintiff was promoted to the rank of Captain. He was third in command at the detention center reporting only to the Warden and the Sheriff. His duties included training, internal investigations and other special assignments relating to sensitive and confidential information (Defendants' Motion to Dismiss, Exhibit 5 Affidavit of Kenneth Tregoning) In October, 2001, Hardinger informed Plaintiff his office was to be moved. When Plaintiff inquired as to where his office would be, Hardinger told him to "just go find a place". (Exhibit A at p. 3) There were no vacant offices. After due consideration, Plaintiff decided to share space with

another officer in an effort to minimize disruption to others. (Exhibit A at p.3) Plaintiff, the third in command at the detention center, and a captain, was not assigned an office carry out his duties. Plaintiff was obviously being sent a message by his superiors.

### C. Plaintiff's Reassignment

Once Plaintiff's office was taken away from him, Defendants continued their efforts to adversely effect Plaintiff's employment by stripping him of his duties. The February, 2002 "reassignment", as Defendants characterize it, was not a reassignment to any meaningful position.

As Captain of Special Operations, Plaintiff had supervised 25-30 individuals at the time of the transfer. Plaintiff was informed by Hardinger that he would "get back to him" with his new responsibilities. At one point, Plaintiff asked Hardinger if the lower ranking Lieutenant on Plaintiff's shift would still be responsible for the overall operation of the jail, Hardinger replied, "Yes". (Exhibit A at p. 4) Plaintiff made additional inquiries weeks later about his duties but he was never informed as to what they were. (Exhibit A at p.4) To date, the position Plaintiff held when he was constructively discharged has never been filled. (Exhibit A at p.11) Any inquires made by Plaintiff during any meeting with regard to pay raise and promotion were made sarcastically. (Exhibit A at p. 3)

### D. Adverse Employment Action

Defendants subjected Plaintiff to adverse employment action when they took away his duties and essentially gave him a meaningless position. This amounts to adverse employment action under all the applicable case law. Zepp v. Rehrmann, 79 F. 3d 381 (4th Cir. 1996); Boone v. Goldin, 178 F.3d 253 (4th Cir. 1999) Plaintiff, being a reasonable person, did not remain on the job.

4

E.  Causal Connection

A causal connection exists between the Defendants knowledge of the potential activity and the adverse action. As previously stated, subsequent to the Millender "in-house" investigation, Plaintiff continued to point out to his superiors that he felt racial problems existed within the department. (Exhibit A at p. 4) Plaintiff obviously became an irritant to his superiors when they felt he was not properly ignoring the racial problems in the Sheriff's Department.  Plaintiff argues that Defendants Tregoning and Hardinger may not have moved quickly with their plans to oust Plaintiff but their movement was inexorable and determined with the expected result.

E.  Defendants' Reasons for Reassignment Were Pretextual

Defendants' memorandum contains reasons for reassignment of Plaintiff. Defendants' state that they had legitimate "concerns about attitude and competence in his prior position". These concerns are presented well after the events have occurred. Any attitude and competence problems were only related to Plaintiff's observations and comments regarding racial problems which continued to exist within the department (Exhibit A at p. 4) It should be noted that Plaintiff was never counseled or reprimanded in his twenty years with the Sheriff's department. (Exhibit A at p. 4) Any subsequent non-discriminatory justification for Plaintiff's reassignment lacks credence and should be ignored by the Court.

IV.   Conclusion

Based on the aforegoing, Defendants' Motion should be dismissed.

        /s/_____
Ronald R. Hogg
Bar No. 08960
4012 College Avenue
Ellicott City, Maryland 21043
(410) 750-2401
Counsel for Plaintiff

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on this 23rd day of April, 2003, a copy of the aforegoing Memorandum in Support of Plaintiff's Response to Motion to Dismiss Complaint Or, Alternatively, For Summary Judgment was mailed via first class mail, postage prepaid, to John F. Breads, Jr., Esquire, 7172 Columbia Gateway Drive, Suite E, Columbia, Maryland 21046 and Frank Mann, Esquire, Assistant Attorney General, Office of the Attorney General, 200 Saint Paul Place, Saint Paul Plaza, Baltimore, Maryland 21202.

        /s/_____
        Ronald R. Hogg

1003.RRH