UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Mark L Pereguoy | * |
|     Plaintiff. | * |
| v. | * |
| State of Maryland, Carroll County, Maryland and Kenneth L. Tregoning, Carroll County Sheriff | *   CIVIL ACTION NO.: MJG02CV4165 <br> * |
|     Defendants. | * |

**STATE DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE**

The State of Maryland and Sheriff Kenneth L. Tregoning, Sheriff of Carroll County, ("State defendants"), by J. JOSEPH CURRAN, JR., Attorney General of Maryland, and FRANK W. MANN, Assistant Attorney General, their attorneys, reply to Plaintiff's Response to Motion to Dismiss Complaint or, in the alternative, for Summary Judgment pursuant to F.R.Civ.P. 12(b)(6) and F.R.Civ.P. 56, and states as follows:

**I.    PLAINTIFF HAS FAILED TO PRODUCE ANY CREDIBLE EVIDENCE HE SUFFERED AN ADVERSE EMPLOYMENT ACTION.**

In his fourteen page affidavit, Plaintiff presents no evidence of any dispute of material fact with regard to any adverse employment action prohibited by Title VII.[1] Instead, Plaintiff focuses mostly on irrelevant, collateral issues. The facts relevant to the merits of this case are simple: Plaintiff alleges he was constructively discharged. He says he was compelled to resign because (1) he was moved out of his office and forced to find a new space and (2) he was reassigned to a new position which he describes as "meaningless." Plaintiff never worked in that new position and has

---

[1] The affidavit is the only extrinsic evidence Plaintiff has presented in the case.

claimed he had "no idea" what the position entailed.[2] Plaintiff believes the above actions were taken against him because he was one of many persons interviewed in connection with an in house investigation into unfounded allegations of race discrimination.[3]

As sole support for his claim that he was wrongly deprived of an office, Plaintiff alleges he returned from Family Medical Leave and learned he had been moved out of his old office and told to go find a new office. He does not claim that there were no other offices available. He does not claim that he was entitled to a specific office as a condition of his employment. Nor does he dispute the State defendants' response that he was given *several* options for obtaining a new, private office.[4] *See Spriggs v. Public Service Com'n of Maryland*, 197 F.Supp.2d 388, 392-93 (D.Md.2002), *citing Von Gunten v. Maryland,* 243 F.3d 858 (4th Cir.2001)

As sole support for his claim that he was assigned to a position of "virtually no responsibility" (Comp. at ¶ 10), Plaintiff merely claims he was not sufficiently informed of his new duties. However, the Court has before it three categories of credible, undisputed evidence,

---

[2] Plaintiff's new assignment was scheduled to take effect February 1, 2002, Plaintiff's last day at work. However, based on Plaintiff's own deposition testimony, Plaintiff spent his last day at work simply boxing up his personal effects. *See* Ex. A (formally St. Def.'s Ex. 4), Peregoy Dep. Tr. 72:6-15.

[3] *See Brown v. Hardenger*, Civil Action No. MJG-01-2023 (January 16, 2003) (unpublished), in which this Court, after considering the same claims raised in the in house investigation, dismissed all claims, with prejudice with costs. A copy of the Memorandum and Order is attached as Exhibit B.

[4] Plaintiff admits he had "two choices for relocating [his] office." *See* Pl.'s affidavit at p. 3. He admits other officers were also willing to give him their offices. *See also* Peregoy Dep. Tr 64:13 - 69:4. He also admits he never talked to the Sheriff about needing an office. *Id.* at 68:8 - :10. Finally, Plaintiff presents no evidence that an office of his particular liking was a condition of his employment.

including Plaintiff's confirming deposition testimony, that (1) Plaintiff received no reduction in pay, rank, status, or benefits as the result of his new assignment; (2) that Plaintiff's new assignment was one of significant responsibility and; (3) that Plaintiff himself *was* informed he would continue many of his current duties as well as assume duties similar to those assigned to Assistant Warden ("Major") Steve Turvin. *See* Peregoy Dep. Tr. 81:81:9 - 12 (admitting that Warden told him he would do "what Major Turvin's doing"), attached herein as State Defendants' Exhibit A; *see also Id.*, Peregoy Dep. Tr. 80:3 - 5 (admitting reassignment had no effect on pay and benefits).

First, the State defendants attached an affidavit, attached previously as State defendants' Ex. 7, describing Plaintiff's new duties as follows:

> ... I act as the Shift Commander. This means I manage the security operations of the detention center. I am also responsible for monitoring the safety and well being of staff, volunteers, visitors, and inmates. My primary responsibility as Shift Commander is to monitor and ensure that subordinate supervisors implement and fully execute the established policies and procedures, special orders, and directives. In the absence of the Warden and the Assistant Warden, the Shift Commander is authorized to act as the Warden's designee.[5]

(Attached previously as Def.'s Ex. 7).

Second, Plaintiff admitted no fewer than three times under oath, that he was told his new duties would be similar to an Assistant Warden's. Peregoy Dep. Tr. 70:8-15; 71:16 - 21; 107:3-14. Plaintiff also admitted he would continue many of his current duties. Peregoy Dep. Tr. 79:06-18; 71:1-12. At the very least, Plaintiff, who is a college educated adult with twenty years experience in Corrections, had constructive knowledge of his new duties and if he continued to have doubts, he could have either scheduled a meeting with either the Warden or Sheriff, or consulted with Major

---

[5] In his Opposition, Plaintiff did not dispute this portion of Major Turvin's affidavit.

Turvin. Peregoy Dep. Tr. 5:18 - 21; 6:1 - 18.[6] There is no plausible reason why, given the facts stated above, his new duties would continue to remain a mystery.

Finally, Plaintiff has admitted in his own affidavit that he was supplied with a general outline of his new position. Pl's Aff. at p.1.

Based on the above undisputed facts and those submitted previously, Plaintiff's claim that he was assigned to a position of "virtually no responsibility" is nothing more than a bald allegation wholly unsupported by facts. Plaintiff presents no facts to show that, as a condition or his employment, the State defendants had a duty to answer his questions or meet with him pursuant to his specific demands. Counts do not sit as "super personnel departments" determining the propriety of each and every action taken by an employer. *Langerman v. Thompson*, 155 F.Supp.2d 490, 500 (D.Md.2001) (*quoting Macky v. Shalala*, 43 F.Supp.2d 559, 576 (D.Md.1999) *(citing Evans v. Technologies Applications & Services Co.*, 875 F.Supp. 1115, 1120 (D.Md.1995)), *aff'd by published opinion*, 80 F.3d 954 (1996) (internal quotations omitted). As the record demonstrates, Plaintiff had opportunities to talk with the Sheriff and Warden. He relinquished those opportunities by resigning.[7]

In short, Plaintiff's vague and conclusory allegations are insufficient to show he suffered an

---

[6] Rather, Plaintiff persists in avoiding the substantive issues and persists in arguing that the Warden did not "get with" him about his new assignment during the period between January 16, 2002 and January 31, 2002. Pl.'s Aff. at p. 4, at no. 4. At any rate, he admits he was given "a general outline" of what his new assignment would entail (Pl.'s Aff. at p. 1.)

[7] Plaintiff's claim that his new position was "meaningless" is also contradicted by his repeated contention that he "had no idea" what his new duties would be. Peregoy Dep. Tr. 71:17 - 21. If Plaintiff truly "had no idea" about his new duties, he would be in no position to conclude that the position was "meaningless" and one of "virtually no responsibility."

4

adverse employment action. *See Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir.1990) (allegation that black employee was "required to work ... where prejudice and bias exist," that she was "treated poorly on the job and harassed," and denied opportunities to be promoted," were insufficient to state a claim for employment discrimination). Therefore, his claim must be dismissed.

II. **PLAINTIFF'S CLAIM OF CONSTRUCTIVE DISCHARGE MUST BE DISMISSED BECAUSE HE PRODUCES NO EVIDENCE THAT (1) HIS EMPLOYER INTENDED TO FORCE HIS RESIGNATION OR (2) THAT HIS WORKING CONDITIONS WERE INTOLERABLE.**

In order to state a constructive discharge claim, Plaintiff must prove two elements: (1) deliberateness of the employer's action and (2) intolerability of the working conditions. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert.denied*, 475 U.S. 1082 (1986), *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir.1993). The first element, deliberateness, "can be demonstrated by actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." *Johnson v. Shalala*, 991 F.2d at 131. The second element, intolerability, "is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d at 1255. See also *Diamond v. T.Rowe Price Assoc., Inc.*, 852 F.Supp. 372, 378 (D.Md.1994) (*citing Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert.denied*, 475 U.S. 1082 (1986)).

In his "Response" or Opposition ("Op."), Plaintiff merely repeats the bald allegations from his Complaint that (1) he felt compelled to resign because his positions was "meaningless" and that (2) by resigning, he was "fulfilling Defendant Hardinder's and Defendant Tregoning's goal to be rid of [him]." Pl.'s Op. at 2. These allegations, even if supported by Plaintiff's personal opinions,

5

are insufficient to state either of the two required elements of constructive discharge. *Simpson v. Welch*, 900 F.2d at 35.

"The Fourth Circuit has cautioned that constructive discharge claims must be 'carefully cabined' because they are 'open to abuse by those who leave employment of their own accord.'" *Diamond v. T.Rowe Price Assoc., Inc.*, 852 F.Supp. 372 at 378 (*citing Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir.1989) (Wilkinson, Jr., concurring in part and dissenting in part), *adopted en banc*, 900 F.2d 27, 28 (4th Cir.1990). It can hardly be disputed that the facts in this case constitute exactly that kind of abuse. Here, Plaintiff quit his job before assuming his new duties. Peregoy Dep. Tr. 77:19-78:13; 72:6-15. However, because he quit his job after the first day his reassignment took effect, Plaintiff has no basis to claim his new position was "intolerable." *Diamond v. T. Rowe Price Assoc.*, 852 F.Supp. at 397 (employer should be protected from discharge suits when employee leaves of his own accord). In fact, Plaintiff never worked in the new position but spent his last day at the Sheriff's Office packing up his personal belongings. Peregoy Dep. Tr. 72:6 - 72:15. As stated above, Plaintiff admitted no fewer than three times during his deposition that he was told his duties would be similar to those of an Assistant Warden on the 3:00 p.m. - 11:30 p.m. shift. Peregoy Dep. Tr. 70:8-15; 71:16 - 21; 107:3-14; *see also* affidavits of Major (Assistant Warden) Earl Stephen Turvin (Ex. 7), Sheriff Kenneth Tregoning (Ex. 5). Plaintiff was given an outline for the position (Pl.'s Aff. at p. 1), he was aware he would continue to conduct internal affairs investigations and, at least temporarily, aware he would continue to perform "cultural diversity" training. Peregoy Dep. Tr. 79:06-18; 71:1-12. His new position had no effect on his rank, pay status, or benefits (Peregoy Dep. Tr. 80:3-5), and, by his own admission, he would have been the highest ranking officer in the jail during his particular shift. Pl.'s Aff. at p.4.

The requirement that an employee must show intolerability "serves the strong legislative

policy in favor of the employee's remaining on the job while [his] claim is being investigated by the EEOC or litigated in the courts." *Diamond v. T. Rowe Price Assoc.*, 852 F.Supp. at 397 (*citing Cowan v. Prudential Ins*. Co, 703 F.Supp. 177, 192 (D.Conn.1986). "As one court has stated, the standard remedy under Title VII is 'to stay and fight.'" *Id.*, (*citing Halbrook v. Reichhold Chemicals, Inc.*, 735 F.Supp.121, 127 (S.D.N.Y.1990)). "Thus, an employee is not permitted to leave work simply because [he] alleges discrimination in the workplace." *Id.*

In the instant case, Plaintiff did exactly what courts repeatedly have discouraged. Rather than stay in his position for even one day to assess the conditions, he quit. Therefore, he cannot show how his new position would have been intolerable. He cannot show any facts to describe his day-to-day routine or his treatment by his superiors. In fact, Plaintiff continues to claim he "had no idea" what his position entailed. Peregoy Dep. Tr. 71:17 - 21. Even if this is true, Plaintiff's claim must be dismissed because he essentially admits he cannot determine whether his new job was intolerable or not.[8]

---

[8] A look at cases from the Fourth Circuit and others defining intolerable working conditions is instructive. *Levandos v. Stern Entertainment, Inc.,* 860 F.2d 1227 (3d. Cir.1988) (employer falsely accused plaintiff of stealing, told her she would be replaced by a male, and asserted she not "fit the mold" because she was a woman); *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir.1984), *cert.denied*, 470 U.S. 1028 (1985) (company knew employee was being racially harassed but did nothing); *Stephens v. C.I.T. Group/Equipment Fin. Co.*, 955 F.2d 1023 (5th Cir.1992) (employer incessantly asked plaintiff when he would resign, demanded he train young successor, required him to explained his demotion to company's biggest client, and asked him to introduce successor to client); *Scott v. Oce Indus., Inc.*, 536 F.Supp.141 (N.D.Ill.1982) (Supervisor referred to women as "broads," purposely created a false record to denigrate the plaintiff, and eliminated all of her job duties; *Thomas v. Cooper Indus. Inc.*, 627 F.Supp. 655 (supervisor verbally plaintiff in front of other employees, told her she had no future with company, and ordered her to do illegal things).

By the same token, the Fourth Circuit has dismissed numerous constructive discharge claims with facts similar to those in the case at bar. *Shealy v. Winston*, 929 F.2d 1009 (4th Cir.1991) (chief magistrate for 19 years not constructively discharged because he was demoted from chief magistrate to magistrate and told to assist new chief, notwithstanding the "awkwardness" of the situation);

(continued...)

As for the first element of a constructive discharge claim, Plaintiff's fourteen page affidavit presents not one scintilla of evidence that the Sheriff Tregoning or Warden Hardinger ever asked him to leave or demanded his resignation. *Nichols v. Harford County Bd. of Educ.*, 189 F.Supp.2d 325, 346 (D.Md.2002)(absence of request for resignation considered in denial of constructive discharge claim). To the contrary, by assigning Plaintiff to a position equal in responsibility to that of an Assistant Warden, the Defendants demonstrated a clear intent and desire to *keep* the Plaintiff employed at the Sheriff's Office. *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728 (4th Cir.1996) (insufficient evidence of employer's intent to induce plaintiff to quit despite allegations that plaintiff was demoted, threatened with termination, questioned about her plans to retire, and told she did not fit into the group and that she walked around like a "ten year-old").

Therefore, because Plaintiff cannot satisfy either the first or second elements of a constructive discharge claim, his claim must be dismissed.

### III. PLAINTIFF CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN ANY PROTECTED ACTIVITY AND THE ALLEGED ADVERSE EMPLOYMENT ACTIONS.

Due to the long gap between Plaintiff's interview and his reassignment (fourteen months), Plaintiff can show no causal connection between any protected activity pleaded in his complaint and any action taken by the State defendants. Plaintiff opposes this by arguing additional facts never before pleaded in his complaint. Pl.'s Op. at p. 5 ("Plaintiff continued to point out to his superiors that he felt racial problems existed within the department."). This is improper and must be stricken

---

[8] (...continued)
*Carter v. Ball*, 33 F.3d 4560, 459 (4th Cir.1994) (dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign); *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d 239 (4th Cir.1997) (employee who complained she was ignored both by co-workers and top supervisor not subject to intolerable working conditions).

for the following reasons.

First, by its very nature and wording, Plaintiff's Complaint very clearly alleges that his job and office reassignment was linked to one specific incident "[o]n or about October 16, 2001." Pl.'s Comp. at ¶ 10-11, and 15. There is no reference to any other so called protected activity. Nor is there any open ended language in the Complaint that Plaintiff allegedly engaged in any additional protected activity. In short, the specificity of the Complaint restricts Plaintiff to the pleaded facts. *Young v. City of Mt. Ranier*, 238 F.3d 567, 576 (4th Cir.2001) (*citing Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir.1998) ("[W]hile notice pleading does not demand that a complaint expound the facts, a plaintiff who does so is bound by such exposition.").

Plaintiff cites page 4 of his affidavit ("Pl.'s Ex. A") in support of his contention that there is a causal connection. However, page 4 does not include any statement about protected activity under Title VII. ("Colonel Keefer would call me into his office and ask me if I thought there were racial problems within the agency and I said yes .."). As for the other pages of his affidavit, the allegations are so vague and not time specific that even if they could be construed as protected activity, they fail to refute the State defendants' contention that a causal connection has not be established.[9]

---

[9] For example, Plaintiff claims he witnessed the Sheriff refer to African Americans as "spooks." However, Plaintiff apparently did nothing in response to this alleged comment. He further claims he heard employees making comments which contained "a racial insinuation," comments that were "stereotypical" and/or "categoriz[ed] minorities." His response, if any, to these comments is described in only vague terms and does not constitute protected activity. *See Fitch v. Solipsys Corp.*, 94 F.Supp.2d 670, 677 (D.Md.2000) (plaintiff did not engage in protected activity, even though he complained that employer made sporadic derogatory remarks about women and African-Americans). Finally, Plaintiff claims he complained because "minority employees were made to not feel welcome in the workplace." Again, this appears to be yet another in a long series of bald allegations unsupported by specific facts. *Bengard v. United Parcel Service*, WL 1328551 at *9 (E.D.N.Y.2001) (to constitute protected activity, employer must have been aware that plaintiff's opposition is directed at conducted prohibited by Title VII); *see also United Black*
(continued...)

## IV.  SUMMARY JUDGMENT.

A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984). To the extent that Plaintiff has submitted an affidavit that conflicts with his deposition testimony, he should not be allowed without explanation to controvert his own deposition. *Church v. State of Maryland*, 180 F.Supp.2d 708, 741 (D.Md.2002), (*quoting Sashadri v. Kasraian* 130 F.3d 798, 804 (7th Cir.1997)). Therefore, given that Plaintiff's deposition testimony alone negates all inference of disputed material fact, Plaintiff's suit must be dismissed.

Also, "[w]hen a moving party has carried its burden under Rule 56 (c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.'" *Barwick v. Celotex Corp.*, 736 F.2d at 958-59 (4th 'Cir.1984) (*quoting Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967). The party opposing summary judgment is required under Rule 56 (e) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56 (e); *Celetex Corp. v. Catrett*, 477 U.S. 377, 324 (1986). The Court need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), nor conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979).

---

[9] (...continued)
*Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979) (court may not accept conclusory factual allegations devoid of any reference to actual events).

In the instant case, Plaintiff submits no credible evidence that he was subjected to intolerable working conditions. He submits no credible evidence that the State defendant intended to force him to resign or that he suffered any kind of adverse employment action prohibited by Title VII. His claims are supported not by facts but by conjecture and personal opinions. District courts have an "an affirmative ... obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (*quoting Catrett*, 477 U.S. at 323-24). Therefore, for the above reasons, the State defendants respectfully request that Plaintiff's Complaint be dismissed, with prejudice, or in the alternative, that Summary Judgment be granted in favor of their favor.

    Respectfully submitted,

    J. JOSEPH CURRAN, JR.
    ATTORNEY GENERAL OF MARYLAND

    _____/s/_____
    FRANK W. MANN
    ASSISTANT ATTORNEY GENERAL
    200 Saint Paul Place
    Baltimore, Maryland 21202
    410-576-6576

Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2003, a copy of the foregoing State Defendants' Reply to Plaintiff's Response was served electronically on all parties..

    _____/s/_____
    Frank W. Mann
    Assistant Attorney General